UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
**LOUIS FERNANDES,**           )
                                           )
      **Plaintiff,**           )
                                           )
      v.           )      Civil Action No. 09-10930-DJC
                                           )
**AGAR SUPPLY CO., INC.,**           )
                                           )
      **Defendant.**           )
)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                 June 7, 2011

### I. Introduction

Plaintiff Louis Fernandes ("Fernandes") brings this action against Defendant AGAR Supply Co., Inc. ("AGAR"), alleging negligence in connection with an injury Fernandes sustained when he stepped into a hole in the floor of a tire shed provided by AGAR to Fernandes' employer. AGAR now moves for summary judgment. For the reasons set forth below, AGAR's motion for summary judgment is GRANTED.

### II. Burden of Proof and Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the burden of showing the district court the basis for its motion and identifying where there exists a lack of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has accomplished this feat, the burden shifts to the nonmoving party, who

1

must, with respect to each issue on which she would bear the burden of proof at trial, [ ] demonstrate that a trier of fact could reasonably resolve that issue in the her favor." Borges ex. rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Celotex, 477 U.S. at 324). "If the nonmovant fails to make this showing, then summary judgment is appropriate." Id. The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995). However, disputes over facts that are not material to the issues raised will not defeat a motion for summary judgment. Anderson, 477 U.S. at 248.

## III. Factual Background

Based upon the Defendant's statement of material facts under Local Rule 56.1 and Plaintiff's response to the same as well as Plaintiff's statement of additional material facts and Defendant's response to the same, the following facts are undisputed.[1]

On December 7, 2007,[2] Fernandes, a technician with Penske Truck Leasing Co. ("Penske") employed at its Taunton location, was injured when he attempted to move a truck tire inside a tire

---

[1] For the purposes of this Memorandum and Order, all references to the parties' filings are abbreviated as follows: Defendant's memorandum in support of its motion for summary judgment ("Def. Memo"); Plaintiff's opposition to Defendant's motion for summary judgment ("Pl. Opp."); Defendant's statement of material facts ("Def. Statement of Facts"); Plaintiff's response to Defendant's statement of material facts ("Pl. Resp. to Def. Statement of Facts"); Plaintiff's statement of additional material facts ("Pl. Statement of Add. Facts"); Defendant's response to Plaintiff's statement of additional material facts ("Def. Resp. to Pl. Statement of Add. Facts"); transcript of oral argument from April 27, 2011 ("Tr."); and deposition transcripts attached as exhibits to the parties' filings ("[name] Tr.").

[2] Although Fernandes' complaint and opposition to AGAR's motion for summary judgment state that the date of the accident was December 6, 2007 (Compl. ¶ 5; Pl. Opp. at 1), in his deposition, Fernandes clarified that his accident occurred during his overnight shift at 3:00 a.m. on December 7, 2007, not December 6, 2007 when his shift began. (Ex. 2, Fernandes Tr. 8:9-17).

shed,[3] stepped into a hole caused by a missing floor board, lost his balance and wrenched his back. (Def. Statement of Facts ¶¶ 1, 17; Pl. Resp. to Def. Statement of Facts ¶¶ 1, 17). When AGAR was located in Boston, its vehicle maintenance personnel used the tire shed to secure their tools, and later used it to store tires. (Pl. Statement of Add. Facts ¶ 3; Def. Resp. to Pl. Statement of Add. Facts ¶ 3). In 2001, AGAR moved its operations to Taunton, Massachusetts where it utilized a garage to perform maintenance on its fleet. (Id.). AGAR brought the tire shed from Boston to Taunton and placed it at the garage. (Id.). The tire shed remained in that same location until it was disposed of by Penske after Fernandes' accident. (Id.).

Shortly after moving to Taunton, AGAR, as landlord, entered into a lease agreement with a company called AMI leasing ("AMI"), as tenant, for leasing and maintenance of tractor trailers on its property. (Pl. Statement of Add. Facts ¶ 4; Def. Resp. to Pl. Statement of Add. Facts ¶ 4). After AMI took over the shop facility and continued to use the tire shed, Penske became the parent of AMI in August 2004. (Pl. Statement of Add. Facts ¶ 7; Def. Resp. to Pl. Statement of Add. Facts ¶ 7; Ex. 3 (letter from Penske to AGAR)). By letter dated October 1, 2004, Penske informed AGAR that Penske had therefore become the tenant under the lease between AGAR and AMI. (Ex. 3 (letter from Penske to AGAR). Thus, at the time of Fernandes' accident, AGAR was leasing a garage on its property to Penske pursuant to a written lease agreement and Penske used the tire shed located on AGAR's property to store tires. (Pl. Statement of Add. Facts ¶¶ 1, 2, 3; Def. Resp. to Pl. Statement of Add. Facts ¶¶ 1, 2, 3). The lease to which both parties refer is entitled, "Addendum to Master Lease Agreement and Maintenance Contract #T2935," dated May 16, 2001. (Ex. 3

---

[3]The tire shed is an old shipping container and in the record was at various times referred to as a container, trailer, or tire barn. (Pl. Statement of Add. Facts ¶ 2; Def. Statement of Material Facts ¶ 2).

(lease)).⁴ The tire shed is not explicitly mentioned in the lease. (Pl. Statement of Add. Facts ¶ 4; Def. Resp. to Pl. Statement of Add. Facts ¶ 4).

Under the lease, AMI occupied the shop/garage at the premises and AGAR retained access to wash bays in the garage and was obligated to maintain and repair the premises. (Id. ¶¶ 4, 5). AGAR performed maintenance and repair on notice or request from Penske and employed custodial and maintenance personnel, while Penske did not. (Id. ¶ 5).

For the purposes of this motion, AGAR conceded that it was the owner of the tire shed (Tr. 3: 7-9), but AGAR did not use the tire shed at any point during Fernandes' employment with Penske. (Def. Statement of Facts ¶ 9; Pl. Resp. to Def. Statement of Facts ¶ 9). Penske had placed a lock on the trailer and had not given a key to AGAR. (Id. ¶ 10). The only copies of the key were kept in the service office of the garage, which was exclusively used by Penske. (Id. ¶ 11). AGAR never inspected or maintained the tire shed and never made any repairs to it. (Id. ¶ 12).

The missing floor board causing Fernandes's injury had been missing since at least 2004, when he began working for Penske. (Id. ¶¶ 17, 18). Fernandes had been in the tire shed approximately 100 times before the night of the accident. (Id. ¶ 22). Although the hole was covered by tires at times, Fernandes was nonetheless aware of the floor defect, having seen the hole at least six to eight times prior to the accident and having stumbled in it on at last two previous occasions. (Id. ¶¶ 19, 20). Other Penske shop employees were also well aware of the missing floor board. (Id. ¶ 21).

At the time of the accident, Fernandes had been removing tires from the tire shed, which was

---

⁴In their filings, both parties rely on the addendum to the master agreement as the relevant "lease" in the instant case.

half full of tires, and had been using a flashlight to illuminate his way since the tire shed had no lights. (Id. ¶¶ 23, 24, 26). As he walked a tire out of the tire shed, his right foot stepped into the hole, which had been uncovered in the process of moving the tires, he lost his balance and wrenched his back in an attempt to prevent himself from falling. (Id. ¶¶ 27-28).

## IV. Procedural History

On June 3, 2009, Fernandes filed the instant complaint alleging negligence against AGAR. (Docket #1). Discovery having been completed, AGAR now moves for summary judgment. (#13). This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The Court heard oral argument on AGAR's motion on April 27, 2011.

## V. Discussion

As AGAR acknowledges, summary judgment is rarely granted in negligence actions, Foley v. Matulewicz, 17 Mass. App. Ct. 1004, 1005 (1984) (citation omitted), as breach of the duty of care and negligence are typically questions of fact. Swan v. U.S., 698 F. Supp. 2d 227, 231 (D. Mass. 2010) (citation omitted). However, whether the defendant owes any duty to the plaintiff in the first place is a question of law and is appropriate for resolution by summary judgment. Brown v. U.S., 557 F.3d 1, 3 (1st Cir. 2009) (citing Afarian v. Mass. Elec. Co., 449 Mass. 257, 261 (2007)).

### A. Duty of Care

Fernandes' negligence claim is premised on his contention that AGAR was responsible for maintenance and repair, including repairing the missing floor board that caused Fernandes' injury, because AGAR owned and controlled the tire shed. To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage or injury resulted and that the breach caused this damage. Brown,

5

557 F.3d at 3 (citing Jupin v. Kask, 447 Mass 141, 146 (2006)). A claim for negligence against AGAR therefore cannot lie without first establishing that a duty flows from AGAR to Fernandes. See, e.g., Brown, 557 F.3d at 3; Jupin, 447 Mass. at 146.

In Massachusetts, commercial and residential landlords are bound by different standards of liability to third parties. Humphrey v. Byron, 447 Mass. 322, 325-27 (2006). In Massachusetts, "'a lessor of commercial premises is liable for personal injuries only if either (1) he contracted to make repairs and made them negligently, or (2) the defect that caused the injury was in a 'common area,' or other area appurtenant to the leased area, over which the lessor had some control.'" Humphrey, 447 Mass. at 328-29 (quoting Chausse v. Coz, 405 Mass. 264, 266 (1989)). That is, liability attaches if either the lease provides that the commercial landlord must make repairs or in the absence of such language in a lease, the commercial landlord retained control over common areas or appurtenant areas. If neither of those circumstances are present, a commercial landlord has no duty of reasonable care to a party who suffers personal injury on the premises. Humphrey, 447 Mass. at 329. Because there is no dispute that AGAR is a commercial landlord since it leases its premises to Penske, Massachusetts' rule with respect to a commercial landlord's liability for negligence applies to the instant case.

      **1.    Whether the Lease Assigns Responsibility for Repairs to the Tire Shed to AGAR**

Under Massachusetts law, interpretation of a contract such as a lease is a question of law appropriately determined at summary judgment. Bank v. Int'l Bus. Machs. Corp., 145 F.3d 420, 424 (1st Cir. 1998) (citation omitted); Commercial Union Ins. Co. v. North America Paper Co., 138 F. Supp. 2d 222, 226 (D. Mass. 2001). If the terms of a contract are unambiguous, the Court must interpret it according to its plain terms. Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 784 (1st

Cir. 2011) (citation omitted). "If those plain terms unambiguously favor either side, summary judgment is appropriate." Bank, 145 F.3d at 424.

Here, the only provision of the lease that refers to maintenance and repairs is paragraph 29 which provides:

> AGAR shall, at is [sic] expense, maintain, repair and replace as necessary the roof, walls, overhead doors, all structural components, oil/water separator, electrical, plumbing, and boiler/furnace issues to the garage, except for repairs occasioned by the negligence of AMI. AMI agrees to pay cost of utilities for the garage.

This textual language makes unambiguously clear, and the parties do not dispute, that the tire shed is not listed in this provision nor in any other part of the lease. (Def. Statement of Facts ¶ 4; Pl. Resp. to Def. Statement of Facts ¶ 4). This paragraph refers to repair and maintenance to the garage only and no other structure on AGAR's property or the leased premises. Fernandes' argument that the lease nonetheless assigns responsibility for maintenance and repairs to AGAR because it is part of the "leased shop area" (Pl. Opp. at 8) is belied by the record. Neither the lease in general nor paragraph 29 of the lease specifically makes any mention of the tire shed. They only refer to repair and maintenance of the garage. Thus, it cannot be said that paragraph 29 or the lease obligated AGAR to repair the missing floor board in the tire shed.

### 2. Whether the Tire Shed is a Common or Appurtenant Area Over Which AGAR Exercised Sufficient Control

Fernandes next argues that even if the lease does not require AGAR to repair the floor in the tire shed, AGAR is nonetheless responsible for its repair and maintenance because AGAR had sufficient control over the tire shed. (Pl. Opp. at 7-10). Absent express repair provisions in a lease, a commercial lessor must retain "some control" over the common or area appurtenant to

the leased area to be liable for injury caused by defects on the property. Humphrey, 447 Mass. at 328-29 (quoting Chausse, 405 Mass. at 266). Under Massachusetts law, a commercial landlord must maintain a high degree of control over the area where the defect occurred to be held liable for third party injuries. See, e.g., Humphrey, 447 Mass. at 329-31.[5] A mere right of access or ownership is insufficient for liability to attach. Id. In Humphrey, the Massachusetts Supreme Judicial Court found a commercial landlord had not retained the requisite control to render it liable to an injured plaintiff even though the landlord had stored and removed items from the property, reserved the right to enter the premises, used common areas, restricted the color of paint the tenant could use, prohibited certain items on the premises and prohibited repairs and alterations to the property without the landlord's approval. 447 Mass. at 330. The Court further noted that even where a landlord reserves "various rights to make alterations and repairs and to approve the tenant's alterations and repairs" such reservation "does not render the landlord liable to the injured plaintiff for an injury occurring on the leased premises" since such "provisions do

---

[5] See also Barry v. Econ. Dev. and Indus. Corp. of Boston, No. 09-P-299, 2010 WL 98962, at *6-7 (Mass. App. Ct. Jan. 13, 2010) (affirming summary judgment for commercial landlord because the record showed that the landlord did not retain "such a high degree of control," despite lease provisions coordinating the operations of the leased premises with the operations underway at the remainder of the landlord's property and provisions allowing the landlord access to the site and the right to make certain repairs); Mandl v. IYH Corp., No. 20014201, 2003 WL 21662007, at *1-2 (Mass. Super. Ct. June 11, 2003) (granting summary judgment for commercial landlord because the lease did not obligate the landlord to keep the area where the plaintiff fell in a safe condition nor was the area common or appurtenant over which the landlord had some control); Crawford v. Clarke, No. 951816, 1998 WL 1247928, at *1-2 (Mass. Super. Ct. Jul. 13, 1998) (granting summary judgment for commercial landlord on grounds that they had not retained sufficient control of the subject road, despite lease provisions granting landlords the future right to use the road if they ever developed the adjacent property, where the landlords had never repainted the lines delineating the road, had never undertaken to maintain the road and had never handled removal of snow on the road while the lease was in effect).

not alter the basic allocation of responsibilities that the parties have worked out in their detailed lease . . . ." Id. at 330-31 (internal quotation marks and citation omitted).

Here, although Penske did not itself contract to be responsible for repair and maintenance of the tire shed as the tenant in Humphrey, it cannot be said that AGAR, the lessor, has any greater control over the tire shed than the landlord had over the stairway in Humphrey. It is undisputed that AGAR did not use or otherwise have actual access to the tire shed.[6] Indeed, the record shows that Penske retained exclusive use of the tire shed. For example, Penske's district service manager, John Tweedie, and former Penske service manager, Vincent Boschetti, testified that both the tire shed and the garage itself were used exclusively by Penske. (Ex. 4, Tweedie Tr. 37:15-24; Ex. 7, Boschetti Tr. 42:16-20, 40:11-15). AGAR's Vice President of Human Resources, Edward Boylan, and AGAR's facility manager, Brian O'Connor, also indicated that Penske had exclusive use of the tire shed. (Ex. 8, Boylan Tr. 35:5-17; Ex. 5, O'Connor Tr. 14:20-15:4). Penske proffers no evidence to the contrary.[7] Thus, even viewing the facts in the

---

[6]Fernandes' argument that AGAR could have asked for a key to use the tire shed that had been locked by Penske is inmaterial, since AGAR never gained access to the tire shed or shared use of the tire shed with Penske. (Def. Statement of Facts ¶ 11; Pl. Resp. to Def. Statement of Material Facts ¶ 11). Nor is the fact that AGAR concedes that it owns the tire shed material since under Massachusetts law, a commercial landlord is not liable simply because it owns the property where the injury occurred; a commercial landlord must sufficiently control that area. See, e.g., Humphrey, 447 Mass. at 329-30.

[7]To the extent that Fernandes argues that the deposition testimony of AGAR's facility manager shows that maintenance and repair of the tire shed rested with AGAR, the Court does not agree with Fernandes' characterization of the facility manager's testimony. (Pl. Opp. at 4, Ex. 12). The facility manager was never asked about repairs to the tire shed, only to the garage. It cannot be said that the tire shed and garage are one in the same since the deposition transcripts show that Fernandes' counsel referred to the garage and tire shed separately, not interchangeably. See, e.g., Ex. 12, O'Connor Tr. 12:3-13:16; Ex. 13, Brown Tr. 12:1-19, 14:1-:20; Ex. 15, Boylan Tr. 28:14-31:5. Such testimony, therefore, does not answer whether AGAR was responsible under the lease or in some other capacity to repair the floor in the tire shed.

9

light most favorable to Fernandes, AGAR did not maintain sufficient control over the tire shed to impose a duty of care.

Fernandes argues that AGAR should nonetheless be liable for failing to repair the floor in the tire shed since AGAR's witnesses testified that if AGAR was aware of "an unsafe condition in the Penske occupied area AGAR would take remedial action." (Pl. Opp. at 9). However, the record does not support this position. In his deposition, AGAR's facilities manager, Brian O'Connor, was not responding to any questions about the tire shed, only the garage. (Ex. 12, O'Connor Tr. 12:3-13:2). The testimony of Edward Boylan, AGAR's Fed. R. Civ. P. 30(b)(6) witness, also does not support Fernandes' argument that AGAR had the responsibility to repair a defect in the shed if it became aware of it. Mr. Boylan testified that if he had become aware of an unsafe condition in the container, AGAR would have discussed remedying it with Penske to determine "who is responsible for this thing." (Ex. 15, Boylan Tr. 28:14-31:5). It does not present a genuine issue of material fact since such testimony merely shows that AGAR would have engaged Penske in a discussion about the tire shed; it does not suggest that AGAR had control over the tire shed. Moreover, under Massachusetts law, even if a commercial landlord has actual notice of an unsafe condition, such awareness does not automatically require the landlord to repair the defect. Humphrey, 447 Mass. at 330 (citing Agustynowicz v. Bradley, 25 Mass. App. Ct. 405, 408 (1988)).

Accordingly, AGAR owed no duty of care to Fernandes since AGAR neither contracted to make repairs to the tire shed nor had control over the tire shed at the time Fernandes was

injured.[8]

**VI.     Conclusion**

For the aforementioned reasons, summary judgment in favor of AGAR is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[8]In light of the Court's finding that AGAR owed no duty of care to Fernandes, the Court need not reach AGAR's alternative argument that, even assuming that it owed a duty of care to Fernandes, such duty was negated by the fact that the missing floor board was an open and obvious danger that relieved AGAR of that duty of care.